# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
# COURT FILE NO.: 19-cv-1524

| | |
|---|---|
| Cory A. Hanson,<br><br>   Plaintiff,<br>v.<br><br>USAA Federal Savings Bank,<br><br>   Defendant. | **COMPLAINT**<br><br>**WITH JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant USAA Federal Savings Bank's (hereinafter "Defendant") violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## JURISDICTION

2. Jurisdiction of this Court is proper pursuant to 15 U.S.C. § 1681, 28 U.S.C. § 1331, and 28 U.S.C. § 1367 for Plaintiff's pendent common law claim of credit defamation against Defendant.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct in question occurred in this District, Plaintiff resides in this District, and Defendant transacts substantial business in this District.

1

## PARTIES

4. Plaintiff, Cory A. Hanson (hereinafter "Plaintiff"), is a natural person who resides in the city of Eagan, county of Dakota, state of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant is a Federal Bank, with headquarters located at 10750 McDermott Freeway, San Antonio, TX  78288, with a registered agent of service at Corporate Service Company d/b/a CSC-Lawyers Incorporating Service Delivery, 211 E. 7th Street, Suite 620, Austin, TX  78701-3218 and is authorized to do business in the state of Minnesota.

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

6. Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

7. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

8. The FCRA was created to "ensure fair and accurate credit reporting, promote

efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

9. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

10. Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

11. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

12. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

13. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living

standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

14. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. (Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf).

## FACTUAL ALLEGATIONS

15. Sometime in or about June 2017, Plaintiff viewed his credit report and realized that he had been a victim of identity theft and that his identity had been used to open various accounts, including an account with Defendant.

16. Immediately thereafter, Plaintiff reported his identity theft to the FTC with report number 81758670.

17. Plaintiff also reported the identity theft to the Richfield Police Department and received case number 17002113 on June 8, 2017.

18. On or about June 13, 2017 Plaintiff mailed letters to the credit reporting agencies and disputed the fraudulent Defendant account (427082900590****) and a corresponding collection account to CBCS (account number 22-3023****) pursuant to 15 U.S.C. §1681i.

19. In turn, the credit reporting agencies, including but not limited to Experian communicated Plaintiff's dispute to Defendant.

20. Defendant failed to conduct a reasonable investigation into Plaintiff's dispute and in doing so violated 15 U.S.C. §1681s-2(b) and additionally failed to update its reporting to show that its tradeline was "disputed".

21. The fraudulent Defendant account remained on Plaintiff's credit profile without a dispute notation which could have done by Defendant populating the "CCC" Metro II field with the code "XB".

22. For the next several months Plaintiff communicated directly with Defendant explaining that he was a victim of identity theft and being lead to believe that Defendant was still investigating his claims.

23. In or about March 5, 2019 Plaintiff submitted a second round of disputes to the credit reporting agencies, in accordance with 15 U.S.C. §1681i, specifically disputing that the Defendant account 427082900590**** and CBCS account 22-3023**** were not his and had been fraudulently opened and included his FCT ID theft report and a copy of his Minnesota Drivers License.

24. Upon information and belief, the credit reporting agencies contacted Defendant again with Plaintiff's dispute.

25. Thereafter Experian forwarded Plaintiff's dispute information to Defendant for investigation as required by 15 U.S.C. § 1681(a)(2).

26. Upon information and belief, Experian sent an ACDV to Defendant regarding account number 427082900590****.

27. Upon information and belief, Defendant verified to Experian that account number 427082900590**** belonged to Plaintiff and was accurately reporting on his credit report, in violation of 15 U.S.C. § 1681s-2(b). Defendant's reporting adversely and/or negatively affected Plaintiff's credit profile and again failed to update the tradeline as "disputed" when Defendant was aware that Plaintiff's dispute was legitimate.

28. Defendant violated 15 U.S.C. §1681s-2(b) when it received the notification of disputes from the credit reporting agencies concerning the Plaintiff's disputed account and failed to conduct a reasonable investigation and failed to delete the fraudulently opened account that did not belong to Plaintiff and failed to update the reporting to show that the account was "disputed".

29. As a result of Defendant's inaccurate reporting to the credit reporting agencies, Plaintiff has suffered reduced credit, emotional distress, embarrassment, frustration, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

30. Plaintiff is entitled to attorney's fees and costs from Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

## TRIAL BY JURY

31. Plaintiff is entitled to, and hereby demands, a trial by jury. US Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq.*

32. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

33. Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

34. As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to his credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

35. Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

36. Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

37. Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II.
## CREDIT DEFAMATION

38. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

39. On or about June of 2017, Plaintiff realized that Defendant, despite having actual knowledge that Plaintiff had not applied for or received a credit card / loan account from the institution and had reported to the credit reporting agencies that he had applied for and received the loan from the institution.

40. Defendant's reporting was malicious and included a notation that the account was charged off, past due and was late.

41. Defendant's misreporting that Plaintiff had not only applied for and received the loan from the institution but that he was past due, he made late payments, and that the account was charged off with a balance, which was false and malicious communications having the tendency to, and actually did, harm Plaintiff's reputation and lower his in the estimation of the community, and, thus, constitute credit defamation.

42. As a result of Defendant's conduct, Plaintiff suffered emotional distress, mental anguish, and anxiety concerning the false reporting.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

- actual, statutory and punitive damages, and costs and attorneys' fees for Defendant's violations of the FCRA, pursuant to 15 U.S.C §§ 1681n and 1681o, in an amount to be determined at trial;
- actual damages for Defendant's credit defamation; and
- for such other and further relief as the Court may deem just and proper.

Dated this 10th day of June, 2019.

> By: s/Thomas J. Lyons Jr.
> Thomas J. Lyons, Jr., Esq.
> Attorney I.D. #: 249646
> **CONSUMER JUSTICE CENTER, P.A.**
> 367 Commerce Court
> Vadnais Heights, MN 55127
> Telephone: (651) 770-9707
> Facsimile: (651) 704-0907
> tommy@consumerjusticecenter.com
>
> ***ATTORNEY FOR PLAINTIFF***

# VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF MINNESOTA        )
                                                   ) ss
COUNTY OF <u>Hennepin</u>        )

     I, Cory A. Hanson, having first been duly sworn and upon oath, deposes and says as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

                                                  s/Cory A. Hanson
                                                  Cory A. Hanson

Subscribed and sworn to before me
this <u>22</u> day of May 2019.

s/Kale Severson
Notary Public